FILED

# United States District Court

for the Northern District of Illinois

JUN 21 2024 MCP

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

THOMAS MADISON GLIMP, individually
as a United States Citizen and derivatively
as an Employee-Owner of Alloyed Enterprises
Corp., d/b/a Fine Young Cannabulls Specialty
Property Insurance,

*Plaintiff,*

v.

UNITED STATES DRUG ENFORCEMENT
ADMINISTRATION and UNITED STATES
ATTORNEY GENERAL,

*Defendants.*

Case No. ___24cv5207___

Judge Jorge L. Alonso
Judge Keri L. Holleb Hotaling

Hon. Judge ___RANDOM CAT 3___

28 U.S.C. §1331
28 U.S.C. §1346(a)(2)

## COMPLAINT

1.　NOW COMES Plaintiff Thomas Madison Glimp, appearing for my own interests, with a complaint against the United States Drug Enforcement Administration and the United States Attorney General for declaratory and injunctive and other and further relief proscribing enforcement of a cannabis scheduling regime that deprives of the equal privileges and immunities of federal citizenship, and so due process.

2.　The present action invokes the ripeness doctrine set out in *Gardner v. Abbott Laboratories*, 387 U.S. 149, 150 (1967) to ask the bench to take evidence in a hearing under the Administrative Procedures Act concerning demerits of cannabis prohibition recognized by the Supreme Court, the Attorney General, and the United States Congress.

3.    In the forthwith APA proceeding, I intend to demonstrate how estoppel of judicial, executive, and legislative judgments render the current scheduling of cannabis incompatible with the United States Constitution.

4.    After demonstrating why the current scheduling regime is unconstitutionally irrational and showing how supervening changes in law necessitate avoidance of 21 U.S.C. §812, *Schedule I(c)(10)*, I will conclude by moving the court to enjoin the Defendants against enforcing cannabis prohibition in a more restrictive manner than that which was agreed to by Congress as a party to the 1961 United Nations Single Convention On Narcotics, as amended by the Commission On Narcotic Drugs as of March 5th 1990, and pray for other and further remedy and relief necessary to ensure prospective parity among the several states under our nation's doctrine of "cooperative federalism." *New York v. United States*, 505 U.S. 144 (1992).

## **PARTIES**

5.    Plaintiff is the United States citizen Thomas Madison Glimp. I currently reside in Denver, CO and now appear as an individual United States citizen and employee-owner of the private Colorado nonprofit Alloyed Enterprises Corp., d/b/a Fine Young Cannabulls Specialty Property Insurance (herein as "Fine Young Cannabulls" or "FYC"). Fine Young Cannabulls has a principal place of business at 1001 Bannock Street, Ste. 413, Denver, CO 80204. My appearance as an employee-owner of Fine Young Cannabulls is incidentally tolerated by FRCvP 17(b)(3) and FRCvP 17(G). Rule 17(b)(3) is applicable pursuant to 705 ILCS §205(1), Cl. 6 as the IL Attorney Act permits non-lawyers to appear in a representative capacity in proceedings under the Americans with Disabilities Act. Rule 17(G) is pertinent insofar that 21 CFR §1316.50, *DEA: Administrative*

2

*Practices, Functions, and Procedures; Administrative Hearings, Appearances/Representation* allows employees of affected businesses to appear in representative capacities.

6.     Defendant 1 is the United States Drug Enforcement Administration (the "DEA") of 800 K Street, N.W., Suite 500, Washington, DC 20001. The DEA is an executive agency of the United States government responsible for administering the Controlled Substances Act and enforcing cannabis prohibition in the United States.

7.     Defendant 2 is the United States Attorney General (the "Attorney General") of 950 Pennsylvania Avenue, NW. Washington, DC 20530. The Attorney General presides over the Department of Justice and so serves as the nation's chief law enforcement officer.

## JURISDICTION AND VENUE

8.     Jurisdiction is appropriate in the District Court because this suit presents a ripe federal question arising under the constitution and laws. *See:* 28 U.S.C. §1331. Jurisdiction is also appropriate under 28 U.S.C. §1346(a)(2) because this is a civil action where an agency of the United States is a Defendant and the sum in controversy is less than $10,000. Venue is proper under 28 U.S.C. §1391(e) because the Illinois Northern District is where a substantial portion of the property is situated and events giving rise to the action have and shall occur.

## BACKGROUND

### I.     THE DEA AND CSA §812, SCHEDULE I(c)(10): PRESENT AND FUTURE

9.     Defendant the Drug Enforcement Administration is an executive agency of the United States government. The DEA has previously argued that it and the Attorney General are the sole

agencies vested with actual authority to administer the Controlled Substances Act of 1970. *See: National Organization for the Reform of Marijuana Laws v. DEA*, 559 F.2d 741 (D.C. Cir. 1977).

10.    In this capacity, the DEA is responsible for overseeing the scheduling of cannabis and other regulated substances. *Id.* at 738.

11.    From the years 1970 through present, the DEA has maintained that marijuana is a Schedule I drug. Schedule I drugs are those drugs which are believed to have "a high potential for abuse," "no currently accepted medical use in treatment in the United States," and "a lack of accepted safety for use of the drug…under medical supervision." *See:* 21 U.S.C. §812(b)(1) and §812, *Schedule I(c)(10)*.

12.    In 1976, glaucoma patient Robert Randall contested this classification as part of a defense raised in a criminal suit brought against him for growing cannabis. Randall effectively argued that the DEA's scheduling regime was inaccurate, and that not only is marijuana an effective medicine, but that it is the *only* drug that can be used to treat the ailment that affected his ocular health. *See: United States v. Randall*, Crim. No. 65923-75 (D.C. Supr. Ct., Nov. 24, 1976).

13.    The following year, the National Organization for the Reform of Marijuana Laws ("NORML") seized on Randall's success in an effort to contest federal cannabis prohibition. The DEA successfully overcame NORML's effort by citing its obligation to adhere to the United Nations Single Convention On Narcotics of 1961 as a basis for preventing substantive changes to the disputed scheduling regime. *See: NORML v. DEA*, 559 F.2d 739 (D.C. Cir. 1977).

14.    On May 21st, 2024 the DEA announced that it is preparing to recommend that cannabis be re-scheduled from Schedule I to Schedule III. However, the process underlying this transition may take months or years, and may not ever actually materialize.

4

15. Even if the public comment period concludes with the DEA and the Attorney General acting timely to reschedule cannabis to Schedule III, the change fails to achieve parity with a treaty to which the United States is party; amendments to the 1961 Single Convention effected by the UN Commission On Narcotic Drugs as of 1990 reflect that cannabis is properly classified under Schedule IV.[1]

### List of Drugs Included in Schedule IV

| | |
|---|---|
| **Acetorphine** | 3-O-acetyltetrahydro-7-alpha-(1-hydroxy-1-methylbutyl)-6,14-endoetheno-oripavine |
| **Acetyl-*alpha*-methylfentanyl** | N-[1-(*alpha*-methylphenethyl)-4-piperidyl]acetanilide |
| **Alpha-methylfentanyl** | N-[1-(*alpha*-methylphenethyl)-4-piperidyl]propionanilide |
| **Alpha-methylthiofentanyl** | N-[1-[1-methyl-2-(2-thienyl)ethyl]-4-piperidyl]propionanilide |
| **Beta-hydroxy-3-methylfentanyl** | N-[1-(*beta*-hydroxyphenethyl)-3-methyl-4-piperidyl]propionanilide |
| **Beta-hydroxyfentanyl** | N-[1-(*beta*-hydroxyphenethyl)-4-piperidyl]propionanilide |
| **Cannabis and Cannabis resin** | |
| **Desomorphine** | dihydrodeoxymorphine |
| **Etorphine** | tetrahydro-7-*alpha*-(1-hydroxy-1-methylbutyl)-6,14-endoetheno-oripavine |
| **Heroin** | diacetylmorphine |
| **Ketobemidone** | 4-*meta*-hydroxyphenyl-1-methyl-4-propionylpiperidine |
| **3-methylfentanyl** | N-(3-methyl-1-phenethyl-4-piperidyl)propionanilide;  cis-N-[3-methyl-1(2-phenylethyl)-4-piperidyl]propionanilide;  trans-N-[3-methyl-1-(2-phenylethyl)-4-piperidyl]propionanilide |
| **3-methylthiofentanyl** | N-(3-methyl-1-[2-(2-thienyl)ethyl]-4-piperidyl]propionanilide |
| **MPPP** | 1-methyl-4-phenyl-4-piperidinol propionate (ester) |
| **Para-fluorofentanyl** | 4'-fluoro-N-(1-phenethyl-4-piperidyl)propionanilide |
| **PEPAP** | 1-phenethyl-4-phenyl-4-piperidinol acetate (ester) |
| **Thiofentanyl** | N-[1-[2-(thienyl)ethyl]-4-piperidyl]propionanilide; and |

16. Schedule IV drugs are those with (A) low potential for abuse relative to the drugs or other substances in Schedule III, (B) currently accepted medical use in treatment in the United States, and (C) limited [potential for] physical dependence or psychological dependence relative to the drugs or other substances in Schedule III. *See:* 21 U.S.C. §812(b)(4).

---

[1] *See:* https://www.unodc.org/pdf/convention_1961_en.pdf, pp. 44.

17.    This designation is consistent with the laws of the State of Colorado where I reside, the forum State of Illinois, the District of Columbia where the Defendants reside, and judicially effected usages of law that render these designations binding upon the government. *Accord:* Thomas, J. in *Standing Akimbo, LLC v. United States*, 594 U.S. __ (2021) at pp. 2-5.

18.    Moreover, continued adherence to tenets of the 1961 Single Convention that distinguish cannabis extracts from cannabis plant matter and cannabis resin may no longer be appropriate. Advances in regulatory oversight of manufacturing processes in states with legal cannabis prevent dangerous additives and impurities from finding their way into medicinal cannabis products.

19.    For the same reasons that pharmaceutical companies that extract pain medications from poppy plants do not insist that customers smoke poppy resin, cannabis extracts free of tar, carbon monoxide, and other carcinogens found in burning plant matter should be treated no differently. And as Justice Iredell noted, there are valid reasons for judicial severance of treaty provisions, such as when a party to a treaty no longer agrees to particular tenets. *See: Ware v. Hylton*, 3 U.S. at 272 (1796).

## II.    PLAINTIFF AS PHYSICALLY HANDICAPPED PERSON

20.    Congress defines handicapped persons as those who suffer from one or more debilitating conditions or injuries that substantially limit that person's ability to participate in one or more major life activities in terms of degree or duration. *See: Toyota Motor Mnfg., Ky., Inc. v. Williams*, 534 U.S. 190-195 (2002); 42 U.S.C. §12102.

21.    As a result of several accidents that occurred between 2003 and present, I have endured an arthroscopic reconstruction of my left anterior cruciate ligament, medial collateral ligament, lateral collateral ligament, and meniscus; an arthroscopic meniscus debridement and microfracture surgery; a lumbar microdiscectomy on a herniated disc at my L4/S1 vertebrae; and an acromion-

clavicle reconstruction. The lattermost injury was suffered concomitantly with a blunt trauma to my thoracic spine that produced substantial hardship not remediable through surgical procedure.

22.     I suffer from perpetual inflammation in my left knee. This becomes evident any time I stand in one place for more than 10 or 15 minutes. Activities as banal as standing in front of a mirror to shave cause substantial swelling, stiffness, and pain.

23.     I also suffer from inflammation in my lumbar and thoracic spine. Activities like bending, twisting, torquing, standing for long periods of time, running, and lifting result in substantial inflammation and pain. This limits my ability to engage in many major life activities at risk of worsening the swelling, stiffness, acute nerve pain, and acute muscular pain that I endure on a regular basis.

24.     On advice from Dr. Stanford Tack of the Illinois Bone and Joint Institute, I take prescription-level amounts of the over-the-counter anti-inflammatory naproxen sodium (brand name "Aleve") up to three times (3x) per day.

25.     Aleve is very useful for mitigating some of the inflammation and stiffness that afflicts my body every day. However, it does not do much of anything to lessen or mitigate the presence of spasticity and pain in muscle tissue adjacent to structurally damaged joints.

26.     I am precluded from taking a higher dose of Aleve than I already take because the proteins in Aleve degrade soft tissues in one's gastrointestinal tract. If I were to take more Aleve than currently recommended, I would incur a substantial risk of developing ulcers, bleeding internally, and dying very suddenly.

27.     Since approximately 2008, I have held a physician's recommendation to use medicinal cannabis as a safer alternative to addictive and lethal opiate pain medicine. I presently nebulize

7

moderate amounts of cannabis extract obtained from a medical dispensary as needed to manage pain and inflammation.

28.    Cannabis is an effective anti-inflammatory and anti-spasmodic that accords relief from joint pain. It also manages spasms in muscle tissue that Aleve does not. Cannabis minimizes the amount of Aleve that I need to take to avoid suffering pain that distracts me from performing at my best in academic and occupational settings. Unlike opiates, cannabis will not kill me.

29.    In 2020, I sought a medicinal cannabis permit from the DEA but received no response. *See:* **Exhibit 1.**

## III.    PLAINTIFF AS OWNER OF SMALL BUSINESS WITH COMMODITY TRADE PRIVILEGES AND ASSOCIATED PROPERTY RIGHTS

30.    In 2017, I started a small business for the purpose of producing personal care products and cleaning supplies like hand soap, shampoo, air freshener, and surface cleaners. I intend to purchase a factory through the Small Business Administration's Section 504 owner-occupied facility program as my first home in the forthcoming years.

31.    To make this viable, I undertook a course of study between 2017 and 2023 that included calculus I, calculus II, calculus III, linear algebra, intermediate microeconomics, intermediate macroeconomics, monetary theory, managerial finance, real estate finance and securitization, business statistics, econometric modeling, statistical sampling, fixed-income securities finance, financial derivatives, bookkeeping, tax accounting, and corporate regulation and governance.

32.    In the course of these studies, I made a promise to the state of Illinois that I would pay taxes to the State in consideration for reduced rate in-state tuition. For a variety of reasons, I intend to bring a job home with me to Illinois from Colorado in a manner consistent with the tenets of 805 ILCS §5/13.75(3), (6), and (11).

33.     Consistently with the foregoing, I presented the Colorado Dept. of Regulatory Agency's Division of Insurance with a plausible, cogent plan to administer a warranty group on behalf of my company and other businesses in accord with the parameters of 3 Colo. Code Reg. §5-1-12-3 and its federal parallel at 17 CFR §4.5(b). This warranty group is to be financed through trade of United States Treasury bonds in arbitrage markets wherein the Treasury serves as the primary surety and indemnitor.[2]

34.     I drafted a model due diligence assessment for a client of the law firm where I currently work that qualifies as a warranty group participant. The assessment of interest withstood scrutiny from a senior managing partner with expertise in financial risk management, bridge finance, mezzanine finance, and other complex transactional business matters. *See:* **Exhibit 2.**

35.     The operation of such a warranty group is realistic largely because of a section in the Federal Reserve Act of 1913 that accommodates issuance of Treasury bonds to businesses when secured by qualifying collateral (*e.g.*, realty, receipts, or chattel). The same provision of law construes "readily marketable agricultural…staples" as qualifying collateral to secure bonds for use in the production of supplemental financial risk management products. *See:* 12 U.S.C. §344.

36.     Like natural pine distillate, sandalwood extract, and mandarin essential oils that my company will be using to fragrance its products, cannabis is a fungible agricultural commodity that is readily marketable in many states.

37.     However, the federally chartered financial institutions with whom Alloyed Enterprises presently has a relationship report that they are unable to permit their facilities to be used for any form of cannabis-related business due to the present scheduling regime.

---

[2] While attending UIC's Liautaud Graduate College of Business, I enjoyed the privilege of studying under a Director from the Chicago Board Options Exchange who provided practical information about the feasibility of this mode of conducting business.

38.     This preclusive paradigm is currently preventing Alloyed Enterprises from taking on interested cannabis businesses as warranty group customers even though they are otherwise qualified.

## PLAINTIFF'S STANDING FOR SUIT

### I.     CSA §812's IMPACT ON PLAINTIFF: IMPENDING TRAVEL

39.     I was raised in the suburb of Barrington, Illinois and graduated college from the University of Illinois at Chicago. I intend to purchase a factory in the City of Chicago in the next few years. To the extent that home is where the heart is, my home will forever be in Chicago, Illinois.

40.     With as much noted, I have had substantial ties to the State of Colorado where I presently reside since 1999 when my family obtained a vacation home near Beaver Creek Mountain Resort in Colorado's Vail Valley.

41.     As a result of the relatively modest distance between Colorado and Chicago, I have made the drive from one locale to the other on dozens of occasions between the 1990s and present.

42.     I presently have hotel reservations in Chicago and will very likely visit Illinois on more occasions within the year.

43.     This is pertinent to the present controversy because the federal government's moratorium on enforcing cannabis prohibition only applies in states that have legalized cannabis. *Accord: Thomas, J.* in *Standing Akimbo, LLC v. United States*, 594 U.S. __ (2021) at pp. 3-4.

44.     Neither Nebraska nor Iowa have repealed cannabis prohibition. As a result, I am unable to travel from Colorado to Illinois without risk of civil or criminal penalty.

45.     The actual and imminent prospect of seizure, arrest, and forfeiture of property abridges my equal protection right to travel as a member of the suspect class comprising medicinal cannabis

patients. *See: United States v. Guest*, 383 U.S. 745 (1966); *Edwards v. California*, 314 U.S. 180 (1941).

46.     Given the certainty that I will travel between Illinois and Colorado moving forward, a circumstance that is "capable of repetition, yet evading review" emerges before the bench. *See: Southern Pacific Terminal Co. v. ICC*, 219 U.S. 515 (1911).

## II.     IMMINENT PROPERTY DAMAGE RESULTANT OF THE DEA'S CONTINUED ENFORCEMENT OF CSA §812, SCHEDULE I(c)(10)

47.     A state-regulated insurer has a Fourteenth Amendment due process right to export insurance products to other states so long as the contract is enforceable under the laws of the state where the product originates. *Accord: Allgeyer v. Louisiana*, 165 U.S. 578, 584 (1897).

48.     The Colorado General Assembly construes cannabis contracts as legally enforceable instruments. *See:* 13 C.R.S. §22-601, *Contracts Pertaining to Marijuana Enforceable*.

49.     The Colorado Dept. of Regulatory Agencies permits the issuance of fungible, warranty-based financial risk management products to participants in private, closed-panel warranty groups upon a showing of competencies by the administrator. *See:* 3 Colo. Code Reg. §5-1-12-3 *et seq.*

50.     I have spoken with personnel from DORA's Division of Insurance about administering a warranty group, and received an affirmation that the plan of operation submitted on behalf of Fine Young Cannabulls is permissible without need for further licensure.

51.     Moreover, Colorado's Marijuana Enforcement Division does not require professional companies like accounting suites or insurers that provide products or services to cannabis businesses to acquire special licenses or permits if they do not directly handle, store, produce, process, or sell cannabis. Fine Young Cannabulls does not directly handle, store, produce, process, or sell cannabis and so requires no further licensure.

52.     *Lex fori*, Illinois has waived its jurisdiction over the proposed transactions pursuant to 805 ILCS §5/13.75(6) as it allows a company to "obtain orders, whether by mail or through employees or agents or otherwise, if orders require acceptance outside this State before they become contracts," but is generally not opposed to the underlying premise. *See:* 410 ILCS §705, *Cannabis Regulation and Tax Act*. Further, 805 ILCS §5/13.75(11) excludes the residency of a corporation's director or officer from comprising Illinois business. This will permit me to pay taxes to Illinois on incomes earned through the proposed course of trade upon my return as I promised without implicating the jurisdiction of the Illinois Department of Insurance.

53.     In addition to conforming with state regulatory regimes, effecting an insurance warranty agreement relating to marketable medicinal marijuana is consistent with Congressional intent evidenced in the Americans with Disabilities Act of 1990. *See:* P.L. 101-336, §501(c), *Insurance* as it stipulates that no provision of the ADA "shall...be construed to prohibit or restrict—an insurer.... from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law."

54.     Fine Young Cannabulls Specialty Property Insurance has all knowledge, skills, and facilities to engage in the gainful trade of commodity interests wherein cannabis, facilities used to produce cannabis, or receipts from cannabis sales serve as collateral to facilitate production of warranty-based financial risk management products without causing harm to others.

55.     Conducting such a gainful trade is a substantive due process right entitled to protections of the Fourteenth Amendment. *See, e.g., Lochner v. New York*, 198 U.S. 53 (1905).

56.     Were it not for the Defendants' continued enforcement of an arbitrary scheduling regime absorbed into related statutes, I would be using property that I currently possess for its beneficial ends through the exercise of trade privileges.

57.     Incomes from employment administering a warranty group are a form of property accorded

due process protections. *See: Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972);

*Haddle v. Garrison*, 525 U.S. 121 (1998).

58.     "There is no *de minimis* exception to Constitutional incursions." *Accord:* Gorsuch, J. citing

Roberts, C.J., dissenting in *Wellness Int'l Network, Ltd. v. Sharif*, 575 U. S. 665, 703 (2015) int.

cit. from *U.S. Trustee v. John Q. Hammons*, No. 22-1238 (2024), Slip. op., pp. 40 (cleaned up).

59.     As such, the infringement of property rights and trade privileges set forth herein are ripe

for review.


## PLAINTIFF'S CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION:
### ADMINISTRATIVE PROCEDURES ACT
### 5 U.S.C. §702 *et seq.*

60.     Plaintiff incorporates by reference all conditions precedent as if set forth fully herein.

61.     The Administrative Procedures Act at 5 U.S.C. §702 *et seq.* grants District judges authority

to review legal questions that have a direct, immediate impact on the party seeking to challenge a

usage of law. *See Abbott v. Gardner*, 387 U.S. 149-154 (1967).

62.     The APA grants this court authority to review "agency action for which there is no other

adequate remedy at law....[whether] preliminary, procedural, or intermediate" in nature. *See: 5*

U.S.C. §704.

63.     In the course of judicial review, the bench may "compel agency action unlawfully withheld

or unreasonably delayed," "hold unlawful and set aside agency action, findings, and conclusions

found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law, (B) contrary to Constitutional right, power, privilege or immunity, … (E) unsupported by substantial evidence, or (F) unwarranted by the facts." *See:* 5 U.S.C. §706.

64.     CSA §812, Schedule I(c)(10) and the proposed amended re-scheduling are arbitrary classifications unsupported by substantial evidence and unwarranted by the facts. The current and proposed scheduling regimes abridge due process rights and equal privileges or immunities of Federal citizenship, and must thus be avoided in the manner contemplated by 28 U.S.C. §2403 and LRCvP 24.1 in favor of adopting internationally agreed norms that reflect scientific knowledge.

## I.     CSA §812, SCHEDULE I(c)(10) AS ARBITRARY AND IRRATIONAL

65.     In *Hedgepeth v. Washington Metropolitan Area Transit Authority*, 386 F.3d 1153-56 (D.C. Cir. 2004), Chief Justice Roberts held that the standard for invalidating a statute under the doctrine of rational basis review requires a showing that there exists no "conceivable state of facts that could provide a rational basis for the classification." (int. cit. to *FCC v. Beach Communications*, 508 U.S. 307 (1993)).

66.     Parties attacking the rationality of a legislative classification must "negative every conceivable basis which might support it." *Hedgepeth*, *Id.*, cit. int. *FCC v. Beach* at 315.

67.     A showing that a statute is without any conceivable rational basis is tantamount to demonstrating that the statute is wholly arbitrary. *See: Wroblewsky v. City of Washburn*, 965 F.2d 458 (7th Cir. 1992) stipulating that "Review for nonarbitrariness under the due process clause is, for our purposes, analogous to review for a 'rational basis' under the equal protection clause."

68.     Cambridge Dictionary defines arbitrary as "based on chance rather than based on reason."

69.     That the current scheduling regime is marked by an absence of reason is self-evidencing by weighing the implications of estopped legislative judgments concerning the relative dangers and benefits of cannabis. While the multitude of state legislatures that have legalized cannabis in

the years since 1970 might incline one to raise a "majority rules" States-rights argument to establish why Schedule I(c)(10) is not supported by reason, proceeding in this manner would improperly denigrate the Supremacy Clause of the Constitution by incorrectly weighting the judgment of state legislators as equivalent to those of members of Congress.

70.     Fortunately, Congress has not been silent on the issue, and the bench need not abrogate its common law practice of upholding Congressional acts as the Supreme Law of the land. To wit,

71.     The District of Columbia is a unique polis. It is construed as a State for the purposes of Art. III jurisdiction. *See:* 28 U.S.C. §1332(e). But unlike the other States, legislation enacted in D.C. by the D.C. Council is subject to the direct supervision of the United States Congress.

72.     This is set out in P.L. 93-198, §601, *District of Columbia Home Rule Act: Reservation of Congressional Authority; Retention of Constitutional Authority* as it provides that "the Congress of the United States reserves the right, at any time, to exercise its constitutional authority as legislature for the District, by enacting legislation for the District on any subject, whether within or without the scope of legislative power granted to the Council by this Act, including legislation to amend or repeal any law in force in the District prior to or after enactment of this Act and any act passed by the Council." §602 of the Home Rule Act, *Congressional Action On Certain Matters* elaborates further on acts of the Council that require Congressional approval.

73.     On October 26th, 2023, these provisions of the D.C. Home Rule Act were invoked in D.C. Act 25-275, *Medical Cannabis Clarification and Non-Resident Patient Access Congressional Review Emergency Amendment Act of 2023.*

74.     The Act—which received Congressional approval—sets out that D.C. residents are entitled to possess, use, cultivate, and sell cannabis for medicinal purposes without threat of seizure, arrest, forfeiture, and other penalty. It also provides that United States citizens in D.C. on a temporary

basis are entitled to reciprocal equal protections of the law that entitle them to possess and use medicinal cannabis in the nation's capital.

75.     Enactments of this sort work embodiments of the Privileges or Immunities clauses of Art. IV, §2, Cl. 1 and Fourteenth Amendment to the United States Constitution as they convey to legislatures the power to "define criminal law and to protect the health, safety, and welfare of their citizens." *Accord:* Thomas, J. in *Standing Akimbo, LLC v. United States*, 594 U.S. __ (2021), Slip op., pp. 5.

76.     During the reconstruction era, this nation's court ruled that privileges or immunities of citizenship exist on bifurcated State and Federal planes. *See, e.g., Slaughterhouse Cases*, 83 U.S. 62-74 (1872).

77.     When Congress enrolls legislation like D.C. Act 25-275, it defines privileges and immunities of federal citizenship entitled to protections of §1 of the Fourteenth Amendment. *Id.* Privileges or immunities of federal citizenship are pre-supposed as superior to those effected by the States in accordance with Tenth Amendment powers. *See, e.g., Rochin v. California*, 342 U.S. 168-173 (1952). Indeed, as told by Hamilton in prescient anticipation of the Fourteenth Amendment, "It may be esteemed the basis of the Union, that 'the citizens of each State shall be entitled to all the privileges and immunities of citizens of the several States.' And if it be a just principle that every government ought to possess the means of executing its own provisions by its own authority, it will follow, that in order to the inviolable maintenance of that equality of privileges and immunities to which the citizens of the Union will be entitled, the national judiciary ought to preside in all cases in which one State or its citizens are opposed to another State or its citizens." *See: Federalist Paper No. 80*, addressed To the People of the State of New York.

78.     In authorizing the embodiment of police powers found in D.C. Act No. 25-275, Congress

gave rise to an irreconcilable statutory dichotomy: locally, but also reciprocally for all citizens of

the United States, cannabis is useful medicine which all who qualify are entitled to possess and

use without fear of arrest or threat of prosecution. But simultaneously, under CSA §812, Schedule

I(c)(10), the same substance is construed to have no medicinal value and pose extreme danger to

the health of those who might dare consume it.

79.     As Mr. Justice Gorsuch wrote but a few years ago, "This Court does not lightly assume

that Congress silently attaches different meanings to the same term in the same or related statutes."

*See: Azar v. Allina Health Services*, 587 U.S. 574 (2019).

80.     CSA §812, Schedule I(c)(1) and D.C. Act No. 25-275 are assuredly related statutes. They

address privileges to use and possess and immunities against prosecution for identical acts

performed with the same fungible agricultural commodity in the same geographic locale. Their

only practical distinctions are those of legislative vantages separated by 54 years of scientific

knowledge and progress away from prejudice and polemics.

81.     Insofar as the bench will not construe related statutes referencing the same term in

divergent manners in absence of a showing of cause which has not—and cannot—be made, it

reasons that the old statute, *i.e.*, CSA §812, Schedule I(c)(10), is arbitrary and irrational. Indeed,

as Mr. Justice Thomas held in *Standing Akimbo*, "prohibition on intrastate use or cultivation of

marijuana may no longer be necessary *or* proper." *Id.* at pp. 5.

82.     Because statutes that are irrationally constructed and arbitrarily enforced deprive of equal

protections and due process, respectively, the inexplicably and irreconcilably inaccurate contents

of CSA §812, Schedule I(c)(10) require the bench avoid the statute in favor of meanings agreed to

by the Congress in D.C. Act 25-275 and the U.N. Single Convention On Narcotics, as amended through 1990.

### SECOND CAUSE OF ACTION:
### DECLARATORY JUDGMENT ACT
### 28 U.S.C. §2201 *et seq.*

83.     Plaintiff incorporates by reference all conditions precedent as if set forth fully herein.

84.     The Declaratory Judgment Act at 28 U.S.C. §2201 *et seq.* "is a vehicle for vindicating […] substantive rights" within the jurisdiction of Art. III courts. *Cmmtte. On The Judiciary v. McGahn*, No. 19-5331, pp. 3-4 (U.S. Ct. Appls. D.C. Cir. 2020) cit. int. *C&E Servs., Inc. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (cleaned up).

85.     I have a substantive right to travel freely about the United States as a constituent of the suspect class of persons comprising medicinal cannabis patients. *See: United States v. Guest,* 383 U.S. 745 (1966).

86.     I also have a substantive right to possess and use agricultural chattel for its beneficial, economically viable purposes without assault by "opprobius epithets" in absence of proof that the property subject of controversy is objectively dangerous to health and misleadingly labeled. *See: United States v. Carolene Products Co.*, 304 U.S. 152-154 (1938); *Ewing v. Mytinger & Cassellberry, Inc.*, 339 U.S. 594 (1950).

87.     I also have rights to enter into contract necessary to earn a living, and to be secure in my property and effects against unreasonable seizure. *See: Lochner v. New York*, 198 U.S. 45-48 (1905); *Bivens v. Six Unknown Agents*, 403 U.S. 390-391 (1971). These protections further guard against takings of chattel without just compensation that culminates in a fine. *See: Horne v. U.S.D.A.*, 576 U.S. 370 (2015).

88.     Federal courts routinely invoke the legal fiction of a substantive continuum of due process rights to interpret the bounds of protections guaranteed by the Constitution. *See:* Opinion of Thomas, J. in *McDonald v. Chicago*, 561 U.S. 742 (2010); *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992).

89.     The bench should rely on this conservative evaluative instrument to identify that the rights to possess, use, travel with, contract for, and trade in medicinal cannabis without loss, forfeiture, penalty, fine, arrest, or harassment are among the liberties entitled to protections granted by the Bill of Rights and the Fourteenth Amendment of the United States Constitution.

90.     Upon so doing, the court should enter orders providing for all declaratory and injunctive and other and further relief necessary to protect these rights against infringement by the Defendants, the states of Nebraska and Iowa, and other states in the Union.

## PRAYER FOR RELIEF

91.     I respectfully pray the court shall weigh the above facts and arguments and take the following actions:

    (1) Strike CSA §812, Schedule I(c)(1) as arbitrary, irrational, and otherwise inconsistent with equal protection and due process guarantees established by the United States Constitution;

    (2) Positively enjoin the DEA and United States Attorney to reschedule cannabis as a Schedule IV drug in the manner set out in the U.N. Single Convention On Narcotics, as amended through 1990;

    (3) Amend, strike, sever, or separate those provisions of the U.N. Single Convention that errantly suggest consuming tar and carbon monoxide is less dangerous that using refined medicine generated using scientific processes in appropriately regulated facilities;

(4) Accord other and further prospective relief that permits for sensible access to banking and trade facilities that facilitate commencement of above-board business which generates necessary tax revenues;

(5) Create other and further remedy and relief that will allow me to travel home to Illinois safely, without threat of seizure, arrest, and forfeiture through orders or decrees directed at the States of Nebraska and Iowa;

and

(6) Create all other and further remedy and relief that the Court deems just or proper with due respect for those pertinent observations of the undeniably decent members of this nation's highest court reflecting on the record.

## **CERTIFICATION AND CLOSING**

92.     I, Thomas Madison Glimp, now appearing for my own interests, do hereby certify that this pleading is presented in conformity with the substantive tenets of FRCvP 11.

Respectfully submitted,

Thomas Madison Glimp
Employee-Owner
Alloyed Enterprises Corp.
Fine Young Cannabulls Spec. Prop. Ins.
1001 Bannock Street, Ste. 413
Denver, CO 80204

303-578-8469
tmglimp@alloyedenterprises.com

Align top of FedEx Express® shipping label here.

12405579



RECEIVED

JUL 21 2024

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Envelop

Recycle m

ORIGIN ID:FOLA  (303) 578-8469
THOMAS MADISON GLIMP
1001 BANNOCK ST APT 413
DENVER, CO 80204
UNITED STATES US

SHIP DATE: 20JUN24
ACTWGT: 0.10 LB
CAD: 6992660/SSF02921

BILL CREDIT CARD

TO  **THOMAS G BRUTON**
**CLERK OF COURT**
**219 S DEARBORN ST 20TH FL**

**CHICAGO IL 60604**
(312) 435-5671          REF:
INV:
PO:                              DEPT:

**FedEx**
Express

**E**



TRK#
0201  **2761 2229 1567**

**FRI – 21 JUN 5:00P**
**STANDARD OVERNIGHT**

**XN CHIA**

60604
IL-US  **ORD**